# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hitachi Capital America Corp. f/k/a Creekridge Capital, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Daniel McCollum and McCollum Business, LLC,<br><br>Defendants. | Case No. 19-cv-2747 (SRN/HB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Quin C. Seiler and Matthew R. McBride, Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for Plaintiff.

Jesse H. Kibort and Gregory N. Arenson, Parkers Daniels Kibort LLC, 888 Colwell Building, 123 North Third Street, Minneapolis, MN 55401, for Defendants;

William R. Terpening, Terpening Law PLLC, 5950 Fairview Road, Suite 808, Charlotte, North Carolina 28210, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

Defendants Daniel McCollum and McCollum Business, LLC move to dismiss this action for lack of personal jurisdiction or, alternatively, for lack of proper venue under 28 U.S.C. § 1406, or, to transfer the case to the Western District of North Carolina or the District of South Carolina. [Doc. No. 8.]  For the reasons set forth below, the Court denies the motion.

## II.     BACKGROUND

This case arises out of a Master Agreement entered into by Plaintiff Hitachi Capital America Corp. f/k/a Creekridge Capital, LLC ("Hitachi") with non-party Oaktree Medical Center P.C. ("Oaktree"), dated January 23, 2009, in which Hitachi provided the use of certain medical equipment to Oaktree in exchange for monthly lease payments.  At the time the Master Agreement was executed, Defendants, who are owners of Oaktree or otherwise affiliated with Oaktree, executed personal and corporate guarantees for Oaktree's obligations under the Master Agreement.  These two-page guarantees contain forum selection clauses in which Defendants consented to the jurisdiction of the state and federal courts located in Hennepin County, Minnesota.  Defendants now seek to avoid enforcement of these forum selection clauses through dismissal or transfer of this case to the federal district court for the Western District of North Carolina or the District of South Carolina.  Specifically, they argue that (1) the forum selections clauses are unreasonable and unenforceable; and (2) without the forum selection clauses, the Court cannot exercise personal jurisdiction over them because they have had insufficient contacts with Minnesota.

### A.     The Parties[1]

Hitachi is a diversified leasing and financial services company providing financing

---

[1]     In setting forth the facts of this case for this present motion, the Court may consider "affidavits and exhibits presented with the motion[] and in opposition thereto."  *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted).  At this stage of the proceedings, the evidence on the issue of personal jurisdiction must be viewed "in the light most favorable to [Plaintiff]."  *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

to commercial businesses across the United States.  (Declaration of Scott R. Loeffel in Supp. of Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Loeffel Decl.") [Doc. No. 15] at ¶ 2.)  Hitachi is headquartered in Norwalk, Connecticut, but its vendor services group (which originated and serviced the deal at issue in this action) is located in Edina, Minnesota.  (*Id*.)  Hitachi has over fifty employees working at its Edina office.  (*Id*.)  All of the invoices sent by Hitachi for amounts due under the contract at issue were sent from its Edina office and, until May 1, 2019, all payments were delivered to Hitachi's post office box in Minneapolis, Minnesota or its office located in Edina, Minnesota.  (*Id*. ¶ 3, Exs. A-B.)  Hitachi alleges that when its customers, like Oaktree, fail to honor their obligations under its financing agreements, "harm is suffered by Hitachi in Minnesota."  (*Id*. ¶ 5.)

Hitachi sued Defendants, who are two non-resident guarantors of the Master Agreement.  Defendant Daniel McCollum is the founder of Oaktree, a pain management practice, and is the sole owner of Defendant McCollum Business, LLC ("McCollum LLC") (collectively, "Defendants").  (First Declaration of Dr. Daniel A. McCollum in Supp. of Defs.' Mot. to Dismiss ("First McCollum Decl.") [Doc. No. 11] at ¶¶ 3, 5.)  Dr. McCollum first founded Oaktree in 1995, with its original office in Easley, South Carolina.  (*Id*. ¶ 7.)  Oaktree's practice expanded to include at least seven practice locations in South Carolina, North Carolina, and Tennessee.  (*Id*.)

In June 2019, the United States filed a complaint[2] under the False Claims Act

---

[2]     The Court may take judicial notice of this action.  *See Deford v. Soo Line R. Co*., 867 F.2d 1080, 1087 (8th Cir. 1989) (taking judicial notice of allegations made in separate action filed in federal district court in Chicago).

against Dr. McCollum and Oaktree, alleging, inter alia, that they engaged in illegal financial transactions and provided unnecessary medical services, such as drug testing and steroid injections and wrote unnecessary prescriptions for opioids.  (Loeffel Decl., Ex. C.) On or about September 19, 2019, Oaktree filed for Chapter 7 bankruptcy.  (*Id*.; *see also* First McCollum Decl., ¶ 10.)

### B.    The Master Agreement

As noted above, on January 23, 2009, Hitachi and Oaktree entered into a Master Agreement.  (Loeffel Decl. at ¶ 8, Ex. D.)  The two-page Master Agreement was executed by Dr. McCollum as Oaktree's President and by Jody Ainley on behalf of Hitachi.  (*Id*.) When she executed the Master Agreement in 2009, Ms. Ainley was Hitachi's Senior Vice President of Contract Administration at Hitachi's office in Edina, Minnesota.  (Loeffel Decl. at ¶ 9.)  As explicitly noted in the Master Agreement, Hitachi's address for this office is "7808 Creekridge Circle, Edina, Minnesota 55439."  (*Id.* Ex. D.)  Ms. Ainley executed the Master Agreement in Edina, Minnesota.  (Loeffel Decl. at ¶ 9.)

Under the Master Agreement, Oaktree agreed to pay monthly payments to Hitachi in exchange for the use of certain medical equipment.  (*Id*.)  The Master Agreement also provided that its terms were "incorporated into each Schedule now or hereafter executed pursuant to the terms hereof."  (*Id*.)  One of these terms was a choice-of law provision stating that Minnesota law should govern and that Oaktree "consents" to jurisdiction "in the state and federal courts of Minnesota," in all capital letters:

> CHOICE OF LAW: THIS AGREEMENT WILL BE
> GOVERNED BY, ENFORCED IN AND INTERPRETED
> ACCORDING TO THE LAWS OF THE STATE OF

4

MINNESOTA. [OAKTREE] CONSENTS TO EXCLUSIVE
JURISDICTION IN THE STATE OR FEDERAL COURTS
OF MINNESOTA.  [OAKTREE] EXPRESSLY WAIVES A
TRIAL BY JURY.

(*Id*.)  The Master Agreement also recognized that additional parties may become obligated

under its terms by signing a joinder agreement or guaranty agreement.  (*Id*.) ("From time

to time additional parties may become obligated under this Agreement . . . by signing a

Joinder Agreement or similar document referring to this Agreement.").

### C.      The Joinder Agreement

Effective the same day as the Master Agreement, Dr. McCollum also executed, on

behalf of Labsource, LLC ("Labsource"), a joinder agreement with Hitachi (the "Joinder

Agreement").  (Loeffel Decl., Ex. E.)  In the Joinder Agreement, Labsource acknowledged

that it would be a user of some, or all, of the medical equipment provided pursuant to the

terms of the Master Agreement.  (*Id*.)  Labsource therefore agreed to "be bound by each

and every existing and future Schedule, term, condition, agreement, certificate, document

and/or instrument executed by [Oaktree] in connection with the [Master] Agreement."  (*Id*.)

### D.      Dr. McCollum's Personal Guaranty

Effective January 23, 2009, the same day as the Master Agreement and the Joinder

Agreement, Dr. McCollum also executed an Absolute and Continuing Personal Guaranty

Agreement with Hitachi ("D.M. Guaranty").  (Loeffel Decl., Ex. F.)  This two-page

guaranty contains only fifteen paragraphs of terms, with all text appearing in the same size

and font.  (*Id*.)  In the D.M. Guaranty, Dr. McCollum agreed to guarantee Oaktree's

obligations under the "Agreement."  The "Agreement" was broadly defined as the "Master

5

Agreement, together with all Schedules, attachments and riders attached or to be attached thereto (collectively, the "Agreement")." (*Id.*) The D.M. Guaranty specifically provides that Dr. McCollum would pay any amount "due and unpaid by [Oaktree]" if it defaults under the "Agreement." *Id.* (stating that "[i]f [Oaktree] shall fail to pay all or any part of the Obligations when due, whether by acceleration or otherwise, Guarantor shall pay [Hitachi], upon [Hitachi's] written demand, the amount due and unpaid by [Oaktree] in a like manner as if such amount constituted the direct obligation of [the] Guarantor.") The D.M. Guaranty further provides that Hitachi may "renew, extend, change, or modify the time, manner, place or terms of payment" under the "Agreement" without notice to or further assent from Dr. McCollum. (*Id.* ¶ 4.)

Moreover, under the D.M. Guaranty, Dr. McCollum waived any right to receive notice of Oaktree's default under the Agreement. (*Id.* ¶¶ 1, 3.) The D.M. Guaranty also contains the following recitals:

> WHEREAS, [Hitachi], **as a condition precedent to entering into said Agreement**, has requested Guarantor provide security by unconditionally guaranteeing payment to [Hitachi] of all rental charges and other moneys due and to become due to [Hitachi] from [Oaktree] under the Agreement (collectively, the "Obligations"); and

> WHEREAS, Guarantor, **in furtherance of his business and/or investment objectives and in order to induce [Hitachi] to proceed with the Agreement**, desires to provide an absolute and continuing guaranty as hereinafter set forth;

> NOW, THEREFORE, in order to induce [Hitachi] to enter into the Agreement and **for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged**, Guarantor hereby agrees as follows:

(*Id.*) (emphasis added).

Notably, for the present motion, the D.M. Guaranty also explicitly contains a forum selection clause in which the parties agree that Minnesota law governs and they "consent" to the jurisdiction and venue of any "federal or state court in Hennepin County, Minnesota." (*Id.* ¶ 13.) The forum selection clause is in one short section titled "Miscellaneous":

> This Guaranty shall be governed by the laws of the State of Minnesota.  **[Dr. McCollum and Hitachi] hereby consent to the jurisdiction of and venue in the Supreme Court of the State of Minnesota and of any Federal or State Court located in Hennepin County, Minnesota** for a determination of any dispute, outside of those that are resolved in arbitration, as to any matters whatsoever arising out of or in any way connected with this Guaranty and authorize service of process on the Guarantor by certified mail sent to the Guarantor at the address for the Guarantor as set forth herein below.

(*Id.*) (emphasis added).

### E.   McCollum LLC's Corporate Guaranty

Like the D.M. Guaranty (and also effective on January 23, 2009), Dr. McCollum, as "President" of McCollum LLC, executed an Absolute and Continuing Corporate Guarantee Agreement with Hitachi ("McCollum LLC Guaranty" and, together with the D.M. Guaranty, the "Guaranties"). (Loeffel Decl., Ex. G.) The McCollum LLC Guaranty is also a two-page document, containing 16 paragraphs of terms, with all text appearing in the same size and font. (*Id.*) Under this guaranty, McCollum LLC agreed to guarantee Oaktree's obligations under the "Agreement." (*Id.* ¶ 1.) The "Agreement" is also broadly defined as the "Master Agreement, together with all Schedules, attachments and riders

attached or to be attached thereto (collectively, the "Agreement")."  (*Id.*)  Like the D.M. Guaranty, the McCollum LLC Guaranty also contains the same recitals, waiver of notice, and right by Hitachi to modify the terms of payment as provided in the D.M. Guaranty, and set forth above.  (*Id.* ¶¶ 1, 3-4.)  Additionally, the McCollum LLC Guaranty also contains a similar, but not exactly identical, forum selection clause in a discrete section labeled "Miscellaneous."  (*Id.* ¶ 13.)  The forum selection clause provides:

> This Guaranty shall be governed by the laws of the State of Minnesota.  **[McCollum LLC and Hitachi] hereby consent to the jurisdiction of and venue in any Federal or State Court located in Hennepin County, Minnesota** for a determination of any dispute[.][3]

(*Id.*) (emphasis added).

### F.    Schedule No. 002 to the Master Agreement

On or about August 25, 2014, Hitachi and Oaktree entered into Schedule No. 002, issued pursuant to the Master Agreement.  (Loeffel Decl., Ex. H.)  The two-page Schedule identifies certain medical equipment that Oaktree leased and the monthly lease charges for the equipment.  (*Id.*)  It further provides that "[a]ll terms and conditions of the Master Agreement are incorporated herein and made part hereof as if such terms and conditions were set forth in this Schedule."  (*Id.*)  Like the Master Agreement, Dr. McCollum executed Schedule No. 002 on behalf of Oaktree as its President and Chief Executive Officer.  (*Id.*)  Ms. Ainley executed Schedule No. 002 in Edina, Minnesota, on behalf of Hitachi.  The

---

[3]    The McCollum LLC Guaranty also contains an arbitration provision.  (Loeffel Decl., Ex. G ¶ 11.)  However, the arbitration provision does not apply to disputes in excess of $25,000, and the dispute here is alleged to be over approximately $ 1 million dollars. (Loeffel Decl., ¶¶ 2, 5, 18.)

schedule further identifies Hitachi as being located at "7808 Creekridge Circle, Edina, Minnesota 55439." (*Id.*)

**G.      Amendment No. 1 to the Master Agreement and Schedule No. 002**

Effective November 1, 2016, Oaktree, Dr. McCollum, McCollum LLC, and Labsource executed Amendment No. 1 to the Master Agreement ("Amendment No. 1"). (Loeffel Decl., Ex. I.)  Scott Loeffel, Hitachi's Vice President, executed Amendment No. 1 on behalf of Hitachi in Edina, Minnesota.   (*Id*. ¶ 14.) Dr. McCollum executed Amendment No. 1 on behalf of himself and Oaktree, Labsource, and McCollum LLC. (*Id.*)

Amendment No. 1 was a one-page agreement that only modified the terms of payment as set forth in the Master Agreement and Schedule No. 002. (*Id.*)  It expressly noted, however, that "<u>**[a]ll other terms and conditions of the Master Agreement and Schedule will remain in full force and effect except to the extent modified[.]**</u>" (*Id.*) (emphasis added).  The modified terms of payment provided that Oaktree would pay Hitachi $5,000 on November 1 and December 1, 2016 and then pay $32,095.00 per month for the next sixty months until December 1, 2021. (*Id.*)  Amendment No. 1 was "Agreed to and Accepted by," Dr. McCollum and McCollum LLC as individual and corporate guarantors. (*Id.*)

**H.      Alleged Events of Default Under Master Agreement**

The Master Agreement provides that Oaktree is in "default" if either Oaktree or Labsource "does not pay its monthly Rent payment or any other amount payable to [Hitachi] within 10 days of its due date." (Loeffel Decl., Ex. D.)  It is alleged that Oaktree and Labsource failed to pay the monthly rent charges for four months in 2019. (Loeffel

Decl. at ¶ 15.)  As a result, it is alleged that Oaktree and Labsource committed multiple defaults.  (*Id*. Ex. D.)

In the event of a default, Hitachi is entitled to the following remedies: (1) payment of all sums due and owing; (2) payment of all sums becoming due, including acceleration of the remaining monthly rent payments for the "initial term" defined under the Master Agreement; (3) payment of the value of the medical equipment; (4) return of the equipment; (5) late fees; and (6) its attorneys' fees and costs.  (*Id*.)  In September 2019, Hitachi had already repossessed the equipment leased to Oaktree under the Master Agreement.  (Loeffel Decl. at ¶ 16.)  It alleges, however, that according to the express terms of the Guarantees, it is entitled to collect all monetary sums "due and owing" from Defendants.  (*See* Loeffel Decl., Exs. F-G.)

## I.       This Action and Defendants' Motion to Dismiss

In September 2019, Oaktree and Labsource filed for Chapter 7 bankruptcy.  ([Doc. No. 1-1] at ¶ 18; *see also* Defs.' Mem. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, to Transfer [Doc. No. 10] ("Defs.' Mem."), at 5.)  As a result, Hitachi has pursued recovery of the amount allegedly due and owing to it from Defendants.  (*See* Compl. [Doc. No. 1-1].)  Specifically, on September 20, 2019, Hitachi filed this lawsuit in Hennepin County District Court against Defendants. (*Id*.)  The Complaint alleges that "[v]enue is appropriate in this judicial district as Plaintiff is located in Hennepin County and Defendants have each contractually consented to this Court's jurisdiction.  (*Id*. ¶ 4.)

On October 21, 2019, Defendants removed Hitachi's suit to this Court on the basis

of diversity jurisdiction.  (*See* Notice of Removal [Doc. No. 1].)  Defendants then moved to dismiss for lack of personal jurisdiction.  [Doc. No. 8.]  Alternatively, Defendants move to dismiss for improper venue under 28 U.S.C. § 1406, or to transfer venue to the federal district court for the Western District of North Carolina or the District of South Carolina. (*See* Defs.' Mem. at 1.)

In opposition, Hitachi argues that this Court can exercise personal jurisdiction over Defendants because they specifically consented to jurisdiction in this forum.  (*See* Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer [Doc. No. 14] (Pl.'s Opp'n"), at 13-24.)  While it argues that Defendants are bound by valid forum selection clauses, it maintains that this Court can independently exercise personal jurisdiction over Defendants.  (*Id.* at 14, 24-30.) Finally, it argues that Defendants' request to transfer this case should be denied because they have failed to meet their heavy burden for transfer.  (*Id*. at 32-36.)

Defendants respond that the forum selection clauses are unreasonable and unenforceable for three main reasons.  First, they argue that the clauses are a product of overreaching because they were unsophisticated parties with no bargaining power and the clauses were "hidden" and obscured in the Guarantees.  (Defs.' Mem. at 9-10.)  Second, they argue that the clauses would effectively deprive them of their day in court if they are enforced because they are facing financial hardship and Minnesota is an inconvenient place for trial.  (Defs.' Mem. at 13.)  Third, they argue that enforcing the clauses would contravene Minnesota' public policy of "judicial economy and prevention of multiple actions on similar issues."  (Reply Mem. in Supp. of Defs.' Mot. to Dismiss for Lack of

Personal Jurisdiction and Improper Venue or, in the Alternative, to Transfer [Doc. No. 16] ("Defs.' Reply") at 11.)  Specifically, they cite to three pending federal cases in "the Carolinas" that they contend "subsume" this action.  (*Id*.)  Finally, Defendants argue that Minnesota courts cannot exercise personal jurisdiction over them because they have insufficient contacts with the forum to establish such jurisdiction.  (Defs.' Mem. at 15-26.) Thus, according to Defendants, the case should be dismissed or transferred to the Western District of North Carolina or the District of South Carolina.  (*Id*. at 26-30.)

## II.   DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

### A.   Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a prima facie showing that the court's exercise of jurisdiction is proper. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  The plaintiff may meet this burden by pleading facts sufficient to "support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum] state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted).  This inference is subject to testing not solely on the pleadings alone, however, but by any "affidavits and exhibits presented" with the motion. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted).  However, "the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [Hitachi], is sufficient to support the conclusion that the exercise of personal jurisdiction over [Defendants] is proper." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975,

979 (8th Cir. 2015).

### B.     Pleading Requirements under Rule 8(a)

Defendants' initial argument is that Hitachi failed to allege sufficient facts in the Complaint to support a reasonable inference that Defendants are subject to personal jurisdiction in this Court.  (Defs.' Mem. at 7-8.)  Although they acknowledge that the Complaint alleges that Defendants "contractually consented to this Court's jurisdiction," they assert that Hitachi makes "no other showing of facts" that would evidence that the Court can exercise jurisdiction over them.  (*Id*. at 8) (citing Compl. ¶ 4.)

Jurisdictional allegations, like any other allegations in the complaint, are subject to Rule 8(a)'s "standard of a short and plain statement of the grounds for the court's jurisdiction[.]"  Fed. R. Civ. P. 8(a)(1).  The plausibility standard for this rule "applies equally to statements of the grounds for the court's jurisdiction under Rule 8(a)(1) and to statements of the claim showing that the pleader is entitled to relief under Rule 8(a)(2)." *Penrod v. K&N Eng'g, Inc.*, No. 18-cv-2907 (ECT/LIB), 2019 WL 1958652, at *3 (D. Minn. May 2, 2019) (citations omitted).  That is, under Rule 8(a)'s standard, "[t]here is no requirement of 'heightened fact pleading of specifics,' but the complaint must contain 'enough facts' to nudge the existence of jurisdiction 'across the line from conceivable to plausible.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, the Court finds that the Complaint meets the Rule 8(a) standard and sufficiently alleges the grounds for exercising personal jurisdiction over Defendants.  The Complaint provides that, "[v]enue is appropriate in this judicial district as Plaintiff is located in Hennepin County and Defendants have each contractually consented to this

13

Court's jurisdiction." (Compl. ¶ 4.) The Court finds that this statement constitutes the requisite "short and plain statement" providing the basis for personal jurisdiction, and appropriately puts Defendants on notice of the alleged grounds upon which the Court may exercise personal jurisdiction over them. Fed. R. Civ. P. 8(a)(1). That Defendants in fact argue that they are not bound by the forum selection clause in the Guarantees reinforces the fact that they had proper notice about the asserted basis of personal jurisdiction. Moreover, attached as exhibits to the Complaint, are the very same Guarantees that contain the forum selection clauses that provide the asserted contractual basis for the Court's personal jurisdiction. (Compl., Exs. C-D.) Accordingly, the Court finds that the allegations in the Complaint, combined with the Guarantees attached as exhibits to the Complaint, sufficiently satisfy the Rule 8(a)(1) jurisdictional pleading requirement.

### C.   The Enforceability of the Forum Selection Clauses

While the Eighth Circuit has not decided whether state or federal law governs the enforceability of a forum selection clause, the parties agree that the Court need not reach this issue "because both federal and Minnesota law follow the same standard when determining the enforceability of a forum selection clause." *Graphic Sys., Inc. v. Avanti Computer Sys. Ltd.*, No. 17-cv-4647 (MJD/HB), 2018 WL 1277007, at *2 (D. Minn. Mar. 12, 2018) (internal citations and quotations omitted). "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "Minnesota courts routinely enforce such clauses and [] there is no public policy in

14

Minnesota that contravenes the enforcement of such a clause." *Airtel Wireless, LLC v. Mont. Elec. Co.*, 393 F. Supp. 2d 777, 785 (D. Minn. 2005).  When parties agree to litigate contract disputes in a certain forum, courts generally enforce that agreement unless it is unjust or unreasonable. *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889-90 (Minn. 1982).

"A forum selection clause is unjust or unreasonable if:  (1) the clause is the product of fraud or overreaching; (2) the party would effectively be deprived of [their] day in court if the clause is enforced; and (3) enforcing the clause would contravene the public policy of the forum in which suit is brought." *St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, No. 12-cv-621 (ADM/AJB), 2012 WL 1576141, at *3 (D. Minn. May 4, 2012); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991).  Consequently, "the forum clause should control, absent a strong showing that it should be set aside by the party resisting enforcement." *U.S. Bank Nat'l Ass'n v. San Bernardino Pub. Emps.' Ass'n*, No. 13-cv-2476 (JNE/JJG), 2013 WL 6243946, at *2 (D. Minn. Dec. 3, 2013) (citation omitted).

### 1.    The Forum Selection Clauses are Not the Product of Fraud or Overreaching

Defendants do not contend that the forum selections clauses are the product of fraud; rather, they claim that the clauses are unenforceable due to overreaching by Hitachi. (Defs.' Mem. at 9-10.)   Specifically, Defendants appear to contend that the use of "boilerplate contract language" that was not negotiated, and was "hidden" in the Guarantees was unfair and their enforcement unreasonable.  (*Id.*)  Based on a plain reading

of the Guarantees, however, the Court disagrees.

First, boilerplate language alone does not create an invalid contract of adhesion. Although forum selection clauses in adhesion contracts—or, in other words, "take-it-or-leave-it" contracts—may be unreasonable if they are the product of unequal bargaining power between parties, *Haustein & Bernmeister, Inc.*, 320 N.W.2d at 891, the "inclusion of boilerplate language is only one factor" suggesting an improper adhesion contract. *St. Jude Medical, S.C., Inc.*, 2012 WL 1576141 at *3. Other factors include "the parties' relative sophistication" and the "opportunity for negotiation." *Id.*; *Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 909-10 (Minn. Ct. App. 2002). Courts also look at the length of the overall agreement, whether the forum selection clause is a distinct paragraph, and whether it is written in plain language. *St. Jude Medical, S.C., Inc.*, 2012 WL 1576141 at *3; *Hauenstein & Bernmeister, Inc.*, 320 N.W.2d at 891. Importantly, in the context of agreements between parties with business experience, courts refuse to invalidate forum selection clauses "merely because one party is less sophisticated than the other[:]"

> Agreements between parties with business experience are not products of unequal bargaining power. Courts will not invalidate forum selection clauses merely because one party is less sophisticated than the other—if that were the law, any person who signed a standard forum contract with a large corporation could later invalidate all or part of that agreement by claiming unequal bargaining power.

*St. Jude Medical, S.C., Inc.*, 2012 WL 1576141 at *3 (citing *Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 720 (8th Cir. 2003)). The Court addresses these factors below.

16

### a.  Defendants are Sophisticated Parties and There was Little Disparity in Bargaining Power

Hitachi argues that the Guarantees were executed "by sophisticated parties and there was little to no bargaining power disparity." (Pl.'s Opp'n at 17.) The Court agrees.

As his Declaration notes, Dr. McCollum is a "trained medical doctor" and is therefore a highly educated, highly paid professional. (First Declaration of Daniel McCollum ("First McCollum Decl.") [Doc. No. 11] at ¶ 6.) He also appears to have extensive business experience despite his assertion to the contrary. (*Id*. ¶¶ 3, 6-7.) For instance, although he claims he is not a "businessman," he founded his own pain management practice over twenty-nine years ago and, as his practice grew, he opened numerous additional offices in South Carolina, North Carolina, and Tennessee. (*Id*. ¶ 7.) He was in fact Oaktree's "leader" up until 2018. (*Id*. ¶ 10) (stating that he was no longer the "leader" of Oaktree after he was replaced by an "independent director in mid-2018 and terminated in 2019."). Thus, while he appears to assert that McCollum LLC was his "first business venture," he presumably negotiated business deals, prior to executing the Guarantees, when leading Oaktree. And, as the "sole owner" of McCollum LLC, (*Id*. ¶ 3), Dr. McCollum's prior business knowledge is imputed to this company. The Court therefore finds that Defendants have the requisite sophistication to enforce a forum selection clause against them. *See*, *e.g*., *St. Jude Medical, S.C., Inc.*, 2012 WL 1576141 at *4 (enforcing a forum selection clause against a Senior Field Clinical Engineer employed by St. Jude because, in part, he was a "highly educated, highly paid professional"); *Lyon Fin. Services, Inc.* v. *Nowobilska Med. Center*, No. 05-cv-1820

(DWF/SRN), 2005 WL 3526682, at *6 (D. Minn. Dec. 22, 2005) (finding that owners of a medical center were "sophisticated equals" with a financial service company when enforcing forum selection clause against owners).

The Court finds *Lyon* instructive here.  In *Lyon*, a financial services company entered into a six-page lease agreement with a privately-owned medical center.  2005 WL 3526682 at *1, 7.  The owners of the medical center personally guaranteed the company's obligations under the lease agreement.  *Id*.  While the *Lyon* court noted that the lease agreement was "boilerplate" and there was "no evidence that the parties negotiated" the forum clause, the court found the owners of the medical center sophisticated equals because they "presumably negotiate business deals in connection with their practice." *Id*. at *6.

Like *Lyon*, here, the Court finds that the forum selection clauses in the Guarantees are not overreaching and are enforceable.  Although there is no evidence that the parties specifically negotiated the forum selection clause and the Guarantees can be similarly described as "boilerplate," the Court finds that both Defendants have the requisite sophistication for the Court to enforce the forum selection clauses.  While they allege that they are substantially less sophisticated than Hitachi, describing Plaintiff as a "multi-national corporation" with approximately $ 88 million in "annual sales," (Defs.' Reply at 7), the Court finds this argument unpersuasive.  The forum selection clauses are not invalidated even if Defendants are less sophisticated than Hitachi.  *See St. Jude Medical, S.C., Inc.*, 2012 WL 1576141, at *3 (refusing to invalidate forum selection clause on the grounds that one party is less sophisticated than the other).  Defendants were fully

equipped to bargain with Hitachi regarding the terms of the Guarantees.  (Loeffel Decl. ¶ 17) (stating that Hitachi regularly negotiates the terms of similar agreements).  While Hitachi may be a multi-national corporation, the Court finds that any disparity in bargaining power with Defendants "was not so great as to amount to overreaching."  *St. Jude Medical, S.C., Inc.*, 2012 WL 1576141 at *4; *see also Kline v. Kawai Am. Corp.*, 498 F. Supp. 868, 872–73 (D. Minn. 1980) (enforcing forum selection clause despite finding agreement "boilerplate" and no evidence that "any negotiations concerning the forum clause" occurred because objecting party had requisite business experience to evaluate agreement that was "little more than two pages" long).

### b.    The Forum Selection Clauses are Distinct Paragraphs in Two-Page Agreements

Moreover, the Court finds that the forum selection clauses contained in the Guarantees—mandating that the "determination of any dispute" take place in any "federal or state court located in Hennepin County, Minnesota"—were clearly written and an obvious, distinct paragraph in a 2-page agreement.  Although Defendants assert these clauses were "hidden" in "six-point font" and obscured in a section labeled "Miscellaneous," (Defs.' Mem at 9-10; Defs.' Reply at 9), the Court finds that a plain reading of these clauses demonstrates otherwise.  The font sizes for the clauses are small but clearly legible, and were in the same style and size font as all of the other terms in the 2-page long agreement.  *See*, *e.g.*, *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1158 (D. Minn. 2011), *aff'd*, 703 F.3d 1104 (8th Cir. 2013) (noting that "small and boilerplate" print is "not enough to render the contract

unenforceable"); *Dave's Cabinets, Inc. v. Komo Mach., Inc.*, No. 05-cv-854 (MJD/RLE), 2006 WL 1877075, at *5 (D. Minn. July 6, 2006) (enforcing a provision in "fine print" but "not unreadable" when parties were sophisticated and provision was in plain and unambiguous language, and in the "same size font as every other term and condition" on the page); *see also Hauenstein & Bermeister, Inc.*, 320 N.W.2d at 891(enforcing forum selection clause when "contained in an easily readable contract and consisting of only two pages"); *Kline*, 498 F. Supp. at 872–73 (enforcing forum selection clause because agreement was "easily readable" and "little more than two pages").

Thus, contrary to Defendants' assertions, the Court finds that the forum selection clauses were clearly and ambiguously set out as terms of the Guarantees. And, any suggestion that Dr. McCollum failed to review these specific terms before signing does not, in any way, make these clauses the product of overreaching or otherwise unreasonable.[4] *State Bank of Hamburg v. Stoeckmann*, 417 N.W.2d 113, 118 (Minn.

---

[4]    Moreover, while Defendants appear to suggest that the forum selection clause should not extend to Schedule No. 001 and Amendment No. 1 (Defs.' Mem. at 10-12), the express terms of the Guarantees appear to indicate otherwise. For instance, the Guarantees explicitly account for the fact that the parties "will provide and **may provide from time to time in the future** certain equipment, software and/or related services (collectively the "Equipment") to be provided by [Hitachi] to [Oaktree] pursuant to the terms of a Master Agreement, together with all **Schedules**, attachments and riders attached **or to be attached thereto** *(*collectively, the 'Agreement')." (*Id*. Exs. F-G) (emphasis added). Thus, from a plain reading of the Guarantees, the Court finds that the application of the forum selection clause to the executed Schedule No. 001 and Amendment No. 01 accords with the manifest intent of the parties. *Minnesota Fed. Sav. & Loan Ass'n v. Cent. Enterprises of Superior, Inc.*, 247 N.W.2d 46, 50 (Minn. 1976) ("If the guaranty contract contains a provision which contemplates or authorizes a change in the terms of the principal contract, a change within the scope of such authorization does not discharge the debtor"); *Dewey v. Henry's Drive-Ins of Minnesota, Inc.*, 222 N.W.2d 553, 555 (Minn. 1974) (finding that guarantor is only

App. 1987) (noting that the party executing a contract will be bound by its terms despite an allegation that he had not otherwise ascertained the contents because he had the "opportunity" to "read and understand" the contract).

### 2. Defendants Will Not be Deprived of their Day in Court if the Forum Selection Clauses are Enforced

Defendants next argue that the enforcement of the forum selection clauses will deny them their "fair day in court" because they will be inconvenienced and burdened if forced to litigate this action in Minnesota. (Defs.' Mem. at 13.) Specifically, they allege that Dr. McCollum does not have the "financial resources" to "adequately litigate" this action in Minnesota. (Defs.' Reply at 5, 10-11) (claiming that defendants are "near-destitute").

However, it is well-established that "mere inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause." *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 790 (8th Cir. 2006) (internal citations and quotations omitted). Rather, "a party seeking to avoid [their] promise must demonstrate that proceeding in the contractual forum will be so gravely difficult and inconvenient that he will be for all practical purposes deprived of his day in court." *Id*.

The Court finds that the "expense" that Defendants allege they will incur if forced to litigate in Minnesota, (Defs.' Mem. at 13; Defs.' Reply at 5, 10-11), "falls well short of necessarily depriving [them] of [their] day in court." *Servewell Plumbing, LLC*, 439

---

released from obligations under the principal contract if material alteration is made without consent of grantor).

F.3d at 790; *Brown v. Glob. Cashspot Corp.*, No. 17-cv-1348 (JRT/DTS), 2017 WL 3278938, at *2 (D. Minn. July 14, 2017) ("the higher cost alleged . . . to litigate in Nevada does not rise to the level of depriving [defendant] of his day in court."); *M.B. Rests.*, 183 F.3d at 753 (enforcing forum selection clause requiring litigation in Utah over plaintiff's objection that he could not afford to litigate there).

In sharp contrast to the facts here, are the facts that were presented to the Eighth Circuit in *McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 345-46 (8th Cir. 1985). There, the Eighth Circuit determined that the Iran forum selection clause was unreasonable because chaotic post-revolutionary conditions in the country, including Iran's ongoing war with Iraq, would "deprive" the party "its day in court." *Id.* Such extreme circumstances are not present here.[5] Thus, the Court finds that Defendants' inconvenience and increased costs are insufficient grounds to render the forum selections clauses here unenforceable.

---

[5]    Although Defendants rely on *N. Leasing Sys., Inc. v. French*, 13 N.Y.S.3d 855 (1st Dep't 2015), to argue that the forum selection clause is unenforceable in light of the inconvenience of this forum, (Defs.' Mem at 13-14), that case is distinguishable. In *French*, the court determined that enforcement of a New York forum selection clause would be unreasonable when the transaction had no ties to New York, the amount in dispute was only $1,839.77, and defendant was 86 years old. *Id.* In contrast, here, Hitachi is located in Minnesota, it signed all relevant agreements in Edina, Minnesota, and the damage alleged here will be felt in Minnesota. Moreover, the amount in dispute is significantly higher (*i.e*, approximately $1 million), and it is not alleged that Dr. McCollum is so elderly that he is physically incapable of traveling to Minnesota. (Loeffel Decl. at ¶¶ 5, 9, 14; Ex. D.)

### 3.    The Forum Selection Clauses Do Not Contravene Minnesota Public Policy

Defendants finally argue that enforcement of the forum selection clauses would contravene public policy.  (Defs.' Mem at 10-11.)  In their reply, they assert that judicial economy and the policy of preventing multiple actions on the same issues to proceed would be contravened by permitting this action to proceed in this forum.  (Defs.' Reply at 11.)  They allege that three other pending federal cases "encompass many of the issues" litigated here.  (*Id.*)  Specifically, they cite to an action filed by a separate entity against Dr. McCollum, *Fidus Inc. Corp. v. McCollum*, 19-cv-312 (W.D.N.C.), which they argue involves the "same witnesses and discovery that will be conducted in this case," and two bankruptcy proceedings filed by Oaktree and Labsource that were commenced "in the Carolinas." (*Id.*) (citing *In re Oaktree Medical Centre, LLC*, 19-05154-hb (D.S.C. Bankr. 2019); *In re Oaktree Medical Centre, P.C.*, 19-05155-hb (D.S.C. Bankr. 2019)).

Although a forum selection clause may be found unreasonable if its enforcement would contravene a strong public policy of the forum, *Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 89 (Minn. App. 1990), the Court finds that this public policy would not be offended by enforcing the forum selection clauses here.  Defendants do not explain the precise overlap in these pending actions.   Moreover, Defendants may face multiple lawsuits in various courts, but they agreed in this contract to handle any claims in Minnesota.  The issue here appears limited to Defendants' alleged failure to pay Hitachi under the terms of the Guarantees.  *See*, *e.g.*, *Lyon*, 2005 WL 3526682, at *7 (enforcing

forum selection clause despite lawsuits in other jurisdictions with overlapping issues because issue was narrowly tailored to an alleged failure to pay). Thus, the Court finds that the forum selection clauses do not thwart public policy.

### D.        Specific Personal Jurisdiction

While Hitachi asserts that Defendants are bound by the forum selection clauses in the Guarantees, it additionally argues that the Court independently has personal jurisdiction over Defendants. (Pl.'s Opp'n at 24-31.) In light of the Court's finding that the forum selections clauses are valid, it need not address this issue. *TempWorks Software, Inc. v. Careers USA, Inc.*, No. 13-cv-2750 (DSD/SER), 2014 WL 2117344, at * 3 (D. Minn. May 21, 2014) (finding that "[a] valid forum selection clause is sufficient to confer specific [personal] jurisdiction") (citing *St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." (citations and internal quotation marks omitted))). Because the forum selection clauses confer specific personal jurisdiction, dismissal is therefore not warranted.

### III.    Defendants' Motion to Dismiss for Improper Venue under 28 U.S.C. § 1406, or in the Alternative, to Transfer Venue

As an alternative to dismissal for lack of personal jurisdiction, Defendants request that the Court dismiss this case under 28 U.S.C. § 1406 on the basis of improper venue. (Def's Mem. at 26) (stating that "[t]he Complaint should be dismissed pursuant to 28 U.S.C. § 1406"). Defendants seek, as an alternative to outright dismissal, to transfer venue to the United States District Court for the Western District of North Carolina or the United

24

States District Court for the District of South Carolina.  (*Id*. at 27-28.)

Where, as is the case here, transfer may be made "wholly within the system of U.S. federal courts," this Court effectively no longer has the power to dismiss the case outright on grounds that another venue would be a better fit for the parties or the underlying issues.  *See Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002)).  Rather than dismiss the case under 28 U.S.C. § 1406 in this circumstance, courts prefer to transfer the case in order "to remove procedural obstacles which would prevent an expeditious and orderly adjudication of a case on its merits."  *Mayo Clinic v. Kaiser*, 383 F.2d 653, 654 (8th Cir. 1967).  For this reason, the Court will treat Defendants' motion to dismiss on the basis of improper venue as a motion to transfer.  *See* 28 U.S.C. §§ 1404, 1406, 1631.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.' "  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 134 S. Ct. 568, 579 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

A § 1404(a) analysis requires the Court to engage in a three-step inquiry.  First, the Court must determine whether the District of Minnesota is a proper venue, without regard to the forum-selection clause.  This is because "[s]ection 1404(a) applies only if the initial federal forum is a proper venue," pursuant to 28 U.S.C. § 1391.  *In re RFC and ResCap*

*Liquidating Trust Litig.*, No. 13-cv-3451 (SRN/JJK/HB), 2015 WL 8082540, at *5 (D. Minn. Dec. 7, 2015) (citing 14D Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3829 (4th ed.)).  Second, the Court must determine the validity of the forum-selection clause.  *Id.* (citing *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1040 (D. Minn. 2015)).  If the clause is valid, then third and finally, the Court must consider any public-interest factors put forth by the parties. *Id.* (citing *Atl. Marine*, 134 S. Ct. at 582)).

As for the first step of the inquiry, the Court considers the convenience of the parties and the witnesses, as well as the interests of justice under 28 U.S.C § 1404(a).  The party seeking to transfer venue normally bears the burden of establishing that a transfer is warranted.  *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir.1997).  That burden may not be met simply by showing that the "factors are evenly balanced or weigh only slightly in favor of transfer."  *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citation omitted).  Rather, the balance of factors must "strongly" favor the movant.  *Id.*  Moreover, the presumption favors the plaintiff's choice of forum, especially where the plaintiff resides in the district in which the lawsuit was filed.  *Travel Tags, Inc. v. Performance Printing Corp.*, 636 F. Supp. 2d 833, 836 (D. Minn. 2007).

Here, Defendants contend that venue would be more convenient in the Western District of North Carolina or the District of South Carolina because the "purported injury occurred in the Carolinas."  (Defs.' Mem. at 25-26) (noting that the alleged default, execution and performance of the contracts all happened in the Carolinas).  Additionally, Defendants argue that the Carolinas would be more convenient for Defendants' witnesses,

and that it would be "extremely [] expensive" and inconvenient to have to bring its records and relevant witnesses to Minnesota. (*See id*. at 25-26, Defs.' Reply at 19-20.) Specifically, they allege that Dr. McCollum is suffering from extreme financial hardship because he presently lacks income and has incurred approximately $ 28,000 in attorney's fees for "various litigation matters." (Second McCollum Decl. ¶ 9.) They therefore argue, without citing any authority, that a transfer is warranted because Hitachi can afford to litigate in North Carolina.

The Court is unpersuaded that Defendants have carried their considerable burden of demonstrating that the balance of factors strongly favors transfer.[6] As an initial matter, the convenience of the parties cannot be said to be demonstrably in favor of Defendants. Just as it would be inconvenient for Defendants to bring their records and party witnesses to Minnesota, it would be equally inconvenient for Hitachi to bring the same to the Carolinas. Transfer of venue does not exist simply to shift the inconvenience from the defendant to the plaintiff. *Hearth & Home Techs., Inc. v. J & M. Distrib., Inc.,* 12-CV-00686 (SRN/TNL), 2012 WL 5995232, at *9 (D. Minn. Nov. 30, 2012). Defendants' contention that the alleged conduct occurred in the Carolinas does not change that determination. At

---

[6]     Moreover, the United States has alleged that Dr. McCollum made "millions of dollars" defrauding insurance companies by providing, among other things, opioids and unnecessary testing at his pain management clinics in violation of the False Claims Act. *United States v. Oaktree Medical Centre, P.C. et al.*, 15-cv-1589 (DCC) [Doc. No. 86] (D.S.C. May 31, 2019). Thus, Defendants' alleged financial condition and "hardship" in litigating in this forum is suspect, especially in light of their failure to address these allegations that were raised by Plaintiffs. (Loeffel Decl. Ex. C) (press release from the United States Attorney's Office for the District of South Carolina describing action against Dr. McCollum)).

this early stage, while the factors relevant to determining the merits of the dispute cannot be determined with great specificity, Hitachi has sufficiently plead a connection between this forum and the action.  Further, that Defendants' "essential witnesses" reside in the Carolinas does not diminish the burden that would be placed on Hitachi's employees residing in Minnesota if forced to travel to the Carolinas to testify.

As to the convenience of the witnesses, this Court considers the number of non-party witnesses, the location of all witnesses, and the preference for live testimony.  *See*, *e.g., K–Tel Int'l, Inc. v. Tristar Prods., Inc*., 169 F. Supp. 2d 1033, 1045 (D. Minn. 2001). Although Defendants have identified certain nonparty witnesses located within the Carolinas, Georgia and Tennessee, (Second Declaration of Dr. Daniel A. McCollum in Supp. of Defs.' Mot. to Dismiss ("Second McCollum Decl.") [Doc. No. 17], Ex. C), not all of these witnesses would be subject to compulsory process by the court after the requested transfer and would still need to travel.  Moreover, as to party witnesses, Defendants assert that all their essential witnesses reside in the Carolinas.  (Defs.' Reply at 20; Second McCollum Decl., Ex. C.)  Other potential witnesses appear to reside in Minnesota.  (*See* Pl.'s Opp'n at 33.)  While there will be some travel involved with litigation in Minnesota, it is not clear that litigation in the Carolinas would be any more convenient, or equally convenient.  Thus, the Court concludes that this factor does not favor transfer.

As for the second inquiry, the party defying the forum-selection clause has the burden to establish its invalidity.  *Rogovsky*, 88 F. Supp. 3d at 1042 (citing *Atl. Marine*, 134 S. Ct. at 581; *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  But, as

28

explained above, Defendants do not present any basis to conclude the forum selection clauses here are invalid.  Consequently, the Court finds the clauses valid.

The public-interest factors relevant to the third inquiry "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.' " *Atl. Marine*, 134 S. Ct. at 581 n.6.  A court must not consider, on the other hand, private interests such as access to evidence, the availability and cost of compulsory process for attendance, and other practical problems affecting the convenience of the parties.  *Id.* at 581 & n.6.

Here, Defendants claim only that a transfer "would better serve judicial economy" because the three pending federal cases noted above "subsume" this action.  (Defs.' Reply at 10.)  However, the Court does not find that this assertion tips the scale towards a transfer. As explained above, Defendants may face multiple lawsuits, but they agreed in this contract to handle any claims here in Minnesota.  They nonetheless assert that the *Fidus* litigation involves the "same witnesses and discovery" and they claim, in a general fashion, that the "allocation of the responsibility for the default giving rise to Hitachi's claims" and the "disposition of the assets at issue" here are being litigated in three actions in North and South Carolina.  (Defs.' Reply at 12.)  Even assuming that is true, the Court finds *Lyon* instructive.  2005 WL 3526682, at *7.  As in *Lyon*, while Defendants may be involved in multiple lawsuits, the issue here appears limited to Defendants' alleged failure to pay Hitachi under the terms of the Guarantees.  *See Lyon*, 2005 WL 3526682, at *7.  Thus, the narrow scope of this particular action appears to weigh against a transfer.  Moreover, the

public's interest in having the case resolved "in a forum that is at home with the law" is best met here. *Atl. Marine*, 134 S. Ct. at 581 n.6. Defendants do not dispute that the claims in this action will be decided under Minnesota law.

In sum, this case is not so unusual or exceptional that it should be transferred despite the presence of valid forum-selection clauses. Consequently, the Court denies Defendants' motion to transfer venue.

**IV.    ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue under 28 U.S.C. § 1406 [Doc. No. 8] is **DENIED**; and

2.   Defendant's alternative Motion to Transfer Venue [Doc. No. 8] is **DENIED**.

Dated:   July 14, 2020                         s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge